IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ENOCH SMITH, | ) |
| | ) |
|     PLAINTIFF, | ) |
| | ) |
| v. | ) |
| | ) |
| | )    **CASE NO. 2:23-CV-02114** |
| **HIGHLAND COMMUNITY** | ) |
| **COLLEGE, DEBORAH** | ) |
| **FOX, BRYAN DORREL,** | )    **JURY TRIAL DEMANDED** |
| **ERIC INGMIRE, EILEEN** | ) |
| **GRONNIGER, AND** | ) |
| **JEFFREY HANCOCK,** | ) |
| | ) |
|     **DEFENDANTS.** | ) |

**FIRST AMENDED COMPLAINT**

PLAINTIFF, Enoch Smith, by and through undersigned Counsel, brings this action against the above-named Defendants for violations of his federal constitutional, statutory and common law rights, and in support of the same hereby states and alleges the following facts and causes of action:

**PRELIMINARY STATEMENT**

1. Plaintiff brings this action under 42 U.S.C. § 1983 for multiple violations of his federal constitutional and statutory rights, including claims for unlawful discrimination and retaliation based on race in violation of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §§ 1981 and 1983, Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.*, which prohibits discrimination on the basis of race, color, and national origin in programs and activities receiving federal financial assistance, for racial discrimination in violation

in employment in violation of Title VII of the Civil Rights Act, 42 U.S.C. §2000d, and, for civil rights conspiracy pursuant to 42 U.S.C. 1985(3).

## JURISDICTION AND VENUE

2. This Court has original jurisdiction of the federal questions presented herein pursuant to 28 U.S.C. §§ 1331, which confers on district courts subject matter jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States.

3. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1343, which gives district courts original jurisdiction over: (a) any civil action authorized by law to be brought by any person to redress the deprivation, under color of any state law, statute, ordinance, regulation, custom, or usage, of any right, privilege, or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; and (b) any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of the civil rights.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), since all Defendants reside or resided in this district and the events giving rise to the claims occurred in this district.

## THE PARTIES

5. Plaintiff Enoch Smith ("Coach Smith" or "Plaintiff") is a resident of Illinois and formerly served as an assistant football coach at HCC for the 2020-21 season, until his employment was terminated in November 2021, following the events alleged below.

6. Defendant Highland Community College ("HCC") is a community college located in Highland, Kansas, and established and existing under the laws of the State of Kansas and pursuant to the Kansas Community College Act, K.S.A. §§ 71–120 et seq. & 71–702. HCC is a member of the National Junior College Athletic Association ("NJCAA") and competes in the

Kansas Jayhawk Community College Conference ("KJCCC" or "Jayhawk Conference"), which is comprised of two-year schools across the State.

7. HCC is a "person" within the meaning of 42 U.S.C. § 1983.

8. HCC is and has been at all relevant times a recipient of federal funding.

9. Defendant Deborah Fox ("Fox") is the President of HCC and has served in this position since August 2019. At all relevant times, Fox was acting under color of law. She is also sued in her individual capacity.

10. Defendant Bryan Dorrel ("Dorrel") is HCC's former Athletic Director. Dorrel had authority to formulate policies and implement practices related to student-athlete recruitment, conduct, and eligibility. At all relevant times, Defendant Dorrel was acting under color of law. He is also sued in his individual capacity.

11. Defendant Eric Ingmire ("Ingmire") is the Vice President of Student Services at HCC and served as its Title IX Coordinator. As such, Ingmire has authority over student discipline, student complaints and had knowledge of and authority to redress the racially discriminatory treatment of Black student-athletes, as well as Plaintiff and others. At all relevant times, Defendant Ingmire was acting under color of state law. He is sued in his individual capacity.

12. Defendant Eileen Gronniger ("Gronniger") was HCC's Director of Human Resources. She was responsible for handling employee complaints, including those involving unlawful discrimination. All relevant times, Gronniger was acting under color of state law. She is sued in her individual capacity.

13. Defendant Jeffrey Hancock ("Coach Hancock") was HCC's Head Football Coach. He was responsible for all aspects of management of HCC's football program, including but not limited to supervision of Plaintiff.

3

**FACTUAL ALLEGATIONS**

14. Coach Smith is a 1999 graduate of HCC, where he also played football but remained active as an alum. On October 16, 2021, Coach Smith was recognized by Highland Community College Alumni Association for community excellence by receiving the Distinguished Alumni Award. The same year gave the commencement speech at Highland's graduation.

15. In January 2020, HCC offered Coach Smith the position of Assistant Football Coach for the Defensive Line and Academic Coordinator for the entire football program under Head Coach Hancock. On information and belief, Coach Smith became the only Black employee at HCC.

16. In reliance on HCC's job offer, Coach Smith left his business and relocated from Chicago to Highland, where he hoped to pursue a career in collegiate athletics coaching football.

17. Coach Christopher "Jake" Landoll was employed by HCC as the Assistant Head Coach and Defensive Coordinator/Linebacker Coach.

18. From the beginning of his employment, Plaintiff observed Coach Landoll abuse and harass Black team members, including being treated differently than their peers. These acts included, among other things, the unjustified berating of players, micro-aggressions like throwing a player's mouthguard into the dirt and using the racial epithet "sand-nigger" to refer to a Muslim player.

19. On or about October 1, 2020, Plaintiff was told by Coach Landoll, in front of Coach Gilbert White, to attend Fort Scott High School to recruit student athletes. He stated, "They think we are racist. I am going to send you to their high school to show them we are not racist." Plaintiff made a verbal and written complaint to Coach Hancock yet no disciplinary action was taken against Coach Landoll to Plaintiff's knowledge.

20. HCC administrators as well as Coach Hancock were aware of Coach Landoll's misconduct and discriminatory behavior. But rather than stop it, they enabled it, allowing Coach Landoll to continue harassing players and make enumerable disrespectful remarks directed toward Plaintiff, making excuses for his misconduct.

21. During his tenure at HCC, Coach Smith personally observed numerous other ongoing acts of racial discrimination and harassment by HCC football coaches and administrators directed at Black student-athletes, employees, and others on an ongoing basis.

22. Coach Smith voiced his concerns numerous times to Coach Hancock and Athletic Director Dorrel, who dismissed them.

23. Dorrel also made frequent dismissive comments to Plaintiff denying there is racial tension at HCC, and telling Plaintiff that past discrimination lawsuits were frivolous and settled for nuisance value.

24. While employed by HCC, Plaintiff was also subjected to similar racial discrimination and was also retaliated against for speaking out for Black student-athletes.

25. During this time, numerous Black student-athletes confided in Coach Smith acts of racial harassment by Hancock, Landoll and Dorrel. Such incidents include but are not limited to Dorrel ordering Coach Smith to conduct criminal background checks *only* on Black prospective student athletes, coaches required to reprimand and discipline Black players differently than White players in a disparate fashion, as well as physical and mental abuse.

26. On or about October 12, 2021, Coach Smith met with President Fox to again express his concerns about the mistreatment of several specific players. Fox pressed Coach Smith to identify the players and that it would be difficult to investigate claims if she did not know who

5

they were. Plaintiff asked Fox to meet with the entire team to address the issue. Fox declined to do so.

27. On or about October 13, 2021, during practice, several Black players had enough and confronted Landoll about his unacceptable behavior. Landoll's reaction was to storm of the field claiming he was ill. Later that day, Landoll sent a group text and called a meeting of those players "who don't think I'm racist" at his home. President Fox, Coach Bradley Oh, and Coach Christopher Watkins attended the meeting.

28. Upon information and belief, most players in attendance at Landoll's home were White.

29. On or about October 14, 2021, Plaintiff had another meeting with Defendant Fox at her request. During that meeting, Fox acknowledged Plaintiff's previous concerns. She admitted she attended the meeting the previous night at Coach Landoll's house. At some point during the meeting, Fox, in reference to a Black player who Fox thought was stirring up dissent, made the bizarre statement to Plaintiff that "Hitler was a great leader."

30. HCC had neither investigated nor taken in actions in response to Plaintiff's repeated complaints about Landoll on behalf of Black players.

31. On or about October 21, 2021, Deborah Fox emailed Coach Smith with a "clarification" telling Coach Smith that HCCs' legal counsel "believes we cannot go further in an investigation with students remaining anonymous. The College does not have a Silent Witness reporting where students can report anonymously. *In this instance, the information known to us is not sufficient to investigate further*."

32. True to its word, HCC never investigated student claims of racial harassment and discrimination.

6

33. On or about October 26, 2021, Coach Smith submitted his own complaint to HCC. Gronninger acknowledged receiving his discrimination complaint submitted the same day. Gronninger stated that "[A]fter reviewing your complaint, the decision has been made to have it investigated by an impartial outside investigator. The report has been turned over to Demetrius Peterson, senior counsel for the law firm Husch Blackwell, LLC. Mr. Peterson specializes in labor law."

34. She further advised that "you can expect to be contacted by Mr. Peterson, however, he also has other cases he's working on, and we do not know how quickly he will begin his investigation. He is the report and your contact information and will contact you as soon as the schedule allows."

35. Mr. Peterson never contacted Plaintiff and, upon information and belief, did not take any action to investigate or address his complaints.

36. Coach Smith also filed a complaint of racial discrimination against HCC with the Office of Civil Rights ("OCR") on or about November 11, 2021, detailing Defendant's unlawful conduct directed against Plaintiffs and Black student-athletes, and in particular acts of racial harassment and discrimination by Hancock, Landoll and Dorrel.

37. Throughout the fall of 2021, Coach Smith tried repeatedly to persuade HCC to investigate players' complaints regarding their treatment and atmosphere of racism around the coaching staff and the school generally.

38. HCC did not simply ignore Coach Smith's complaints; they retaliated against him for making them.

39. While employed at HCC, Plaintiff's performance was exemplary. Hancock, Dorrel and others told Plaintiff that he had promising career in college coaching and would have their strong support. They offered glowing references.

40. In November 2021, Hancock resigned and HCC players gathered a petition to urge the school to hire Plaintiff as his replacement. HCC never responded to his application for that position.

41. Coach Smith's employment was terminated in November 2021.

42. HCC never investigated Plaintiffs' complaints during his employment. Several months later, on March 1, 2022, Gronniger sent the following email to Plaintiff: "[w]hen I last visited with you at our meeting in December, I came away with the impression that you were not interested in moving forward with an internal investigation beyond that point. If you do wish to continue, I will need to know so that we can follow up. In the interest of a timely resolution, please respond by Friday, March 4, 2022, and let me know if you wish to participate in the College's process in response to your complaint or not."

43. By that time, Coach Smith had not been an HCC employee for nearly four months.

44. Gronniger was obviously trying to make a record that Coach Smith "didn't appear interested" in making an employee complaint when still employed, by the empty offer to "follow up" long after his employment ended.

45. As of the filing of this Amended Complaint, Plaintiff's picture and biography was wiped from HCC's athletics website as a retaliatory act. In a prior suit filed against HCC (*BJ Smith et al v. HCC et al,* Case No. 2:22-CV-02048, D.Kan.*)*, it similarly erased those Plaintiffs' contributions to HCC's women's basketball program and only restored the coach's pictures and

8

biographies when forced. It appears again HCC has done the same vindictive and petty attempt at revision of history in this case.

46. Plaintiff timely filed his administrative charge of discrimination with the EEOC, which issued his right-to-sue letter.

## COUNT I

### (Race Discrimination under Title VII Against HCC)

47. Plaintiff incorporates the allegations in Paragraphs 1-46 as if fully set forth herein.

48. Plaintiff's race was a determinative or motivating factor in Defendants' actions.

49. There was no legitimate, nonretaliatory reason for Defendants' conduct and their actions were transparently pretextual and with no factual or legal basis.

50. Defendants took adverse employment action against Plaintiffs, including reassigning job duties, demotion and ultimately termination of his employment. The motivating factor behind the unlawful acts alleged herein was to discriminate on the basis of race.

51. The Individual Defendants were each personally involved in the intentionally discriminatory acts alleged herein and acted with malice.

52. The Individual Defendants each had the authority but failed to investigate or redress claims of racial discrimination by Plaintiff and others.

53. Plaintiff has fully exhausted available administrative remedies.

54. Defendants acted with malice and reckless indifference to Plaintiff's right to be free from racial discrimination, entitling Plaintiff to an award of punitive damages. Punitive damages are particularly warranted here because of HCC's well-documented past behavior and history of continuing civil rights violations as alleged in past litigation.

55. As a direct and proximate cause of Defendants' actions alleged herein, Plaintiff has suffered damages in the form of past and future lost wages, benefits, career opportunities and injury to his reputation.

## COUNT II

**(Violation of under 42 U.S.C. §§ 1981 and 1983 Against All Defendants)**

56. Plaintiff incorporates the allegations in Paragraphs 1-55 as if fully set forth herein.

57. Plaintiff brings this Count for discrimination based on race in violation of his rights prohibited by 42 U.S.C. §1981 against all Defendants pursuant to Section 1983.

58. Plaintiff is African American and a member of a protected class for purposes of Section 1981.

59. Plaintiff experienced disparate treatment and harassment at the hands of Defendants because of their intentional discrimination based on race.

60. The individual Defendants were each personally involved in the intentionally discriminatory acts alleged herein, and each acted with malice and in reckless indifference to Plaintiff's rights.

61. The individual Defendants each had actual knowledge of myriad complaints of racism by student-athletes and athletic personnel. Each had the authority to investigate and redress such claims but failed to do so.

62. Plaintiff had a contractual relationship with HCC with respect to his employment.

63. Defendants took adverse employment action against Plaintiff as alleged herein.

64. Plaintiff's race was a determinative factor in Defendants' actions.

65. Pursuant to Section 1981, Plaintiff may recover both compensatory and punitive damages, as well as back pay and lost benefits for an unlimited period. *See Johnson v. Ry. Exp. Agency, Inc.*, 421 U.S. 454, 461 (1975).

66. Defendants' actions as alleged herein were willful, malicious and done with reckless indifference to Plaintiff's federally protected rights, entitling him to recover punitive damages.

67. As a direct and proximate cause of Defendants' actions alleged herein, Plaintiff has suffered damages in the form of past and future lost wages, benefits, career opportunities and injury to his reputation.

## COUNT III
### (Retaliation under 42 U.S.C. §§ 1981 and 1983 and Against All Defendants)

68. Plaintiff incorporates the allegations in Paragraphs 1-67 as if fully set forth herein.

69. Plaintiff brings this Count against all Defendants for retaliation pursuant to Section 1981, which provides in relevant part:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

70. In other words, Section 1981 "prohibits not only racial discrimination but also retaliation against those who oppose it." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, ⸺ U.S. ⸺, 133 S.Ct. 2517, 2529, 186 L.Ed.2d 503 (2013).

71. Retaliation claims are cognizable under Section 1981, regardless of the plaintiff's race, to anyone who suffers retaliation because he or she tried to help someone else suffering direct racial discrimination. *See CBOCS West, Inc. v. Humphries*, 553 U.S. 422 (2008).

72. Plaintiff engaged in opposition to racial discrimination that is protected under the statute. Coach Smith attempted repeatedly to voice his player's complaints and concerns to the

HCC administration, which remained deliberately indifferent to the numerous acts of racial harassment.

73. A reasonable person would find that the challenged actions were materially adverse.

74. A causal connection existed between the protected activity alleged by Plaintiff and the adverse actions.

75. Defendants took adverse employment action against Plaintiff for engaging in protected activities as defined in Title VI.

76. Retaliatory animus played a "motivating part" in the above adverse actions taken by Defendants.

77. There was no legitimate, nonretaliatory reason for Defendants' conduct.

78. As a direct and proximate cause of Defendants' actions alleged herein, Plaintiff has suffered damages in the form of past and future lost wages, benefits, career opportunities and injury to his reputation.

## COUNT IV
### (Title VI Claim against HCC)

79. Plaintiff incorporates the allegations in Paragraphs 1-78 as if fully set forth herein.

80. Plaintiff brings this Count against Defendant HCC pursuant to the Civil Rights Act of 1964, § 601 et seq., 42 U.S.C.A. § 2000d et seq, against Defendant HCC.

81. Title VI prohibits recipients, most of which are employers, from discriminating based on race, color, and national origin. Section 601 of Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.

82. Title VI forbids recipients from discriminating in employment if a primary objective of the federal financial assistance to a recipient is to provide employment, or when its employment practices negatively affect the delivery of services to ultimate beneficiaries, here, student-athletes.

83. Plaintiff is a member of a member of a protected class for purposes of Title VI.

84. As alleged herein, Plaintiff was subject to harassment based on race, color, or national origin, which negatively affected his ability to provide required educational services to HCC student-athletes, the majority of whom are persons of color.

85. At all times relevant herein, Plaintiff was engaged in protected activity, including but not limited to objecting to the football coaching staff's ongoing racial discrimination and harassment of African American student-athletes, who confided to Plaintiff concerning the unlawful conduct to which they were subject, and, on whose behalf, Plaintiff reported the incidents to the HCC administration.

86. Defendants took adverse employment actions against Plaintiff including but not limited to pressuring him to take a different coaching position at the insistence of Landoll, by changing his job duties, and by ultimately terminating his employment for engaging in protected activities as defined in Title VI.

87. Defendants intentionally discriminated against Plaintiff based on race.

88. In the alternative, these Defendants each had actual knowledge of and were deliberately indifferent to the hostile environment of racial harassment suffered by Plaintiff and those African American student-athletes on whose behalf Plaintiff complained of the same. Defendants took no measures in response despite this.

89. HCC administrators if they had actual notice of the foregoing conduct and did not take corrective action to end the alleged retaliation.

90. As a direct and proximate cause of Defendants' actions alleged herein, Plaintiff has suffered damages in the form of past and future lost wages, benefits, career opportunities and injury to his reputation.

## COUNT V
### (Title VI Retaliation against HCC)

91. Plaintiff incorporates the allegations in Paragraphs 1-90 as if fully set forth herein.

92. Plaintiff brings this Count for retaliation against Defendant HCC pursuant to the Civil Rights Act of 1964, § 601 et seq., 42 U.S.C.A. § 2000d et seq.

93. Title VI does not specifically prohibit retaliation, but courts generally imply a private cause of action for retaliation based on the statute's general prohibition of intentional discrimination. *See Jackson v. Birmingham Bd. of Educ.,* 544 U.S. 167, 173–74, 125 S.Ct. 1497, 161 L.Ed.2d 361 (2005) (Title IX).

94. HCC can be liable for retaliation by school administrators if they had actual notice of the conduct and did not take corrective action to end the alleged retaliation.

95. HCC administrators had notice of the complaints alleged above and refused to take correction action.

96. Plaintiff was therefore engaged in protected activity under Title VI and suffered adverse action contemporaneous with or after such activity.

97. Further, there is a direct causal nexus between Plaintiff's engaging in protected activity and the adverse employment actions alleged herein.

98. The actions taken by HCC were motivated by racial animus in retaliation for Plaintiff engaging in protected activity challenging HCC's racially discriminatory policies and practices.

99. As a direct and proximate cause of Defendants' actions alleged herein, Plaintiff has suffered damages in the form of past and future lost wages, benefits, career opportunities and injury to his reputation.

WHEREFORE, Plaintiff Enoch Smith prays that this Court conduct a jury trial on his claims, and enter judgment in his favor and against Defendants as follows:

A. For compensatory damages in whatever amount may be proven at trial under federal law;

B. For punitive damages in an amount to be proven at trial;

C. For pre- and post-judgment interest as allowed by law;

D. For reasonable attorneys' fees, including non-taxable litigation expenses;

E. For costs of suit; and

F. For such further other relief as the Court may deem just, proper, and appropriate.

## JURY DEMAND

Plaintiff requests a jury trial on all issues so triable.

## DESIGNATION OF PLACE OF TRIAL

Pursuant to Local Rule 40.2(a), Plaintiff requests trial in Kansas City, Kansas.

Respectfully submitted,

 /s/ *William C. Odle*
William C. Odle        KS #14235
The Odle Law Firm, LLC
6 ½ East First Street, Suite 2
Parkville, MO 64152
Tel:    (816) 631-5220
Fax:    (816) 631-5225
Email:  wodle@odlelawfirm.com
**ATTORNEY FOR PLAINTIFF**